441 So.2d 1178 (1983)
STATE of Florida, Appellant,
v.
Boyce E. GLOSSON, Matthew A. Bronza, Robert C. Brooke, James P. Sheridan, Howard T. Smith, and Frances Lorraine Gonzalez, Appellees.
No. AO-431.
District Court of Appeal of Florida, First District.
December 13, 1983.
Jim Smith, Atty. Gen., and John W. Tiedemann, Asst. Atty. Gen., Tallahassee, for appellant.
Robert G. Duval of Bergstresser & Duval, Miami, for appellee Boyce E. Glosson.
Harvey Robbins, North Miami, for appellees Matthew A. Bronza, Robert Brooke and James Sheridan.
Harvie S. Duval of Greenfield & Duval, North Miami, for appellees Harold T. Smith and Frances Lorraine Gonzalez.
JOANOS, Judge.
The State of Florida appeals the trial court's dismissal of the two-count information charging appellees with possessing between 100 and 2,000 pounds of cannabis and conspiring to traffic more than 100 pounds of cannabis because of prosecutorial misconduct. We agree that there was prosecutorial misconduct requiring dismissal and affirm.
Appellees were arrested after their alleged involvement in a marijuana transaction in which Norwood Lee Wilson (Wilson), acting as an agent for the Levy County Sheriff's Department, was involved. In this case, Wilson set up the alleged transaction through Janet Moore, an acquaintance of appellees Gonzalez and Smith. Wilson was the seller, Gonzalez and Smith allegedly found buyers. Motions to dismiss based upon entrapment and prosecutorial misconduct were filed and denied. Further motions to dismiss prompted a hearing at which the state stipulated that entrapment had been asserted by each defendant; that Wilson had an oral agreement with the Levy County Sheriff, which was known and carried out under the State's Attorney's supervision; that Wilson was to receive 10% of all civil forfeitures as a result of the criminal investigations; that the contingent fee would be paid out of civil forfeitures going to the Levy County Sheriff's Department; that Wilson must testify and cooperate in the prosecution to collect the contingent fee; that this was such a case; and that successful prosecution was unattainable without Wilson's testimony. The trial court found as a matter of law that the state was guilty of prosecutorial misconduct inherently violative of constitutional due process.
The state argues, among other things, that appellee's due process defense is bottomed *1179 on the notion that the governmental involvement in the case has rendered its witnesses inherently incredible and that the evaluation of the credibility of a witness is for the jury, not the judge.
While a witness's credibility is normally evaluated by the jury, we do not see this as merely a question of credibility to be left to the jury. The state has admitted its involvement in a scheme whereby an individual is promised payment contingent upon his successfully making criminal cases against others to whom he is to sell cannabis provided by the Levy County Sheriff's Department. The state admits also that it has no case without Wilson's testimony. This "payment to make cases against criminal defendants" arrangement deprives the defendants of due process. See Williamson v. United States, 311 F.2d 441 (5th Cir.1962). The circumstances of this case are not a situation where the state merely seeks evidence of criminal activity but is more akin to the manufacturing of criminal activity by the state. We cannot tolerate such behavior under our system of constitutional protections.
Inherent in the state's citation to State v. Eshuk, 347 So.2d 704 (Fla. 3rd DCA 1977), is the argument that United States v. Joseph, 533 F.2d 282 (5th Cir.1976), removes this case from the Williamson ambit by there being no particularly named defendants as the targets of the agent's attempts to produce evidence. The Joseph opinion focused on the targeting of defendants before the crime was committed as the factor requiring reversal in Williamson. While Joseph narrowed the Williamson holding to cover only operations directed at named defendants, there are greater similarities between Williamson and this case than were present in Joseph. In Williamson, as here, a paid informant was used to set up the illegal transaction. The Williamson opinion points out that the agent made the purchases himself, produced the evidence against the defendants and was paid for his catch  a wrongdoing precluding the use of its fruits. Williamson at 444-445. In Joseph, the paid informant merely introduced undercover police to sellers of controlled substances, with the court pointing out that the case did not hinge on the informants' testimonies. Here, the state stipulated that it had no case without Wilson. The similarities of the agent's direct involvement in the illegal transaction, payment only upon successful prosecution based upon the agent's testimony and cooperation in the investigation, and the importance of the paid agent's testimony in producing evidence against the defendants bring this case within the ambit of Williamson and distinguish it from Joseph.
Accordingly, the trial court is AFFIRMED.
LARRY G. SMITH, J., concurs.
NIMMONS, J., dissents with written opinion.
NIMMONS, Judge, dissenting.
I respectfully dissent.
The facts upon which the defendants' Fla.R.Crim.P. 3.190(c)(4) motions to dismiss were presented to the court were stipulated by the State and defendants as follows:
1. The defense of entrapment has been asserted by each of the defendants charged by information in this case.
2. The State's chief witness in this matter, Norwood Lee Wilson, entered into an oral contract with the Sheriff of Levy County, Florida.
3. The above-mentioned contract was entered into with full knowledge, concurrence and carried out under the investigative supervision of the State Attorney's Office of the Eighth Judicial Circuit.
4. The conditions of this contract with Norwood Lee Wilson was for Wilson to receive ten percent of all civil forfeiture proceedings filed as a result of the criminal investigations which he initiated and in which he participated.
5. The contingency fee was to be paid out of civil forfeitures going to the Levy County Sheriff's Department.
6. Norwood Lee Wilson is required to testify and cooperate in the prosecution of the criminal cases filed as a result of the investigations which he initiated and *1180 in which he participated in order to collect the contingent fee.
7. This case is one of the aforementioned cases.
8. The successful prosecution of this case cannot be accomplished without the testimony, participation, and cooperation of Norwood Lee Wilson.
These are the facts upon which the trial court determined as a matter of law that the defendants were entitled to dismissal.
Neither the trial court's dismissal order nor this Court's majority opinion relies upon the defense of entrapment. The dismissal was predicated entirely upon alleged prosecutorial misconduct which was deemed to have violated the defendants' due process rights. I can well understand the need for recognition of a defense of entrapment available to one who is lured by law enforcement authorities into committing a crime which he otherwise had no intention of committing. However, I submit that the learned trial judge erred in relying upon this rare due process defense, a kind of "super entrapment" defense presumably available to even those up to their ears in predisposition.
In the past 20-odd years, our criminal justice system has witnessed the development of an amazing assortment of procedural rights and remedies which have little or nothing to do with the determination of guilt or innocence. I fear the majority's decision will become an unintended contribution to the "extra baggage" which has rendered our system ineffective in dealing with crime, and particularly with respect to drug trafficking, an erosive influence on the very fabric of our society.
For the purposes of their successful due process defense, the defendants do not even deny their guilt. Instead, regardless of the degree of culpability and predisposition which the state may be prepared to prove at trial, the defendants seek discharge because the law enforcement officials engaged in conduct which they regard as unfair. Assuming that the officials exceeded the bounds of propriety or, for that matter, even engaged in illegal conduct, the result should not be that admittedly guilty defendants go free. This Court has so recognized in a similar situation. In Lawrence v. State, 357 So.2d 424 (Fla. 1st DCA 1978), the undercover agent sold the defendants a pound of marijuana. The defendants appealed the trial court's denial of their motion to dismiss on the grounds of "unconscionable misconduct, abuse of prosecutorial discretion and violations of due process and equal protection." In affirming, we stated:
It is important to note that appellants do not rely upon the defense of entrapment. Whether or not agent Weaver's conduct is protected by F.S. 893.09(5) we need not determine. Clearly each of the defendants were guilty of unlawful possession of marijuana and they do not claim to have been entrapped. Neither does the record reveal that the state has infringed upon their constitutional rights. As stated in Hampton v. United States, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976):
"* * * If the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police under the applicable provisions of state or federal law. * * *" (Citations omitted: 96 S.Ct. at page 1650).
357 So.2d at 424, 425.[1]
I believe the majority has gone astray in relying upon Williamson v. United States, 311 F.2d 441 (5th Cir.1962), particularly in view of the subsequent expressions by both the Supreme Court in Hampton and our court in Lawrence.
The majority's decision will, in my view, pave the way for even more pre-trial evidentiary sideshows in which the beleaguered trial judge will be called upon to determine whether, during the investigation, the law enforcement officials, prosecutors *1181 and their agents engaged in conduct which might be regarded as unconscionable  and this, even though the defendant was not entrapped into committing the crime. Resourceful counsel will undoubtedly find new and imaginative ways of attempting to demonstrate how their clients have been victims of misconduct in the investigative stage, and substantial time will have to be spent by trial judges in disposing of these new pretrial proceedings, an exercise which has nothing to do with guilt or innocence.
I would leave to the jury, after adequate instructions on the well-recognized principles of the law of entrapment, the question of the defendants' guilt or innocence.
NOTES
[1] There was no majority opinion in Hampton v. United States, supra. The above referred quote is from the plurality opinion announcing the judgment of the Court.