490 So.2d 80 (1986)
Joe Edward LEE, Appellant,
v.
STATE of Florida, Appellee.
No. BG-38.
District Court of Appeal of Florida, First District.
January 15, 1986.
*81 Terry N. Silverman, Gainesville, for appellant.
Jim Smith, Atty. Gen., Tallahassee, for appellee.
JOANOS, Judge.
Joe Edward Lee appeals from the trial court's denial of his motion to suppress and denial of his motion to withdraw plea of nolo contendere. Lee presents two points for review: (1) whether the state's contingent fee agreement with the confidential informant whereby the informant was to produce evidence against Lee violated Lee's right to due process; and (2) whether the trial court erred in denying Lee's motion to withdraw his plea, when a law enforcement officer recommended incarceration. We affirm, but certify the question on point two on the basis of conflict with the Fourth District Court of Appeal.
On November 19, 1984, Lee was charged in four counts with possession and sale of cocaine on January 19, 1984, and with possession and sale of cocaine on January 20, 1984. On January 20, 1985, Lee filed a motion to dismiss for improper governmental conduct, alleging that the Florida Department of Law Enforcement (FDLE) entered into an oral contract with a confidential informant, which agreement provided a contingent fee to the informant for purchases of controlled substances from Lee.
In explaining the circumstances of the informant's employment, FDLE Agent Collins stated that in 1983 he was summoned to the Duval County Sheriff's Office. When he arrived at the sheriff's office, the informant was introduced to him as a person who desired work as a confidential informant. The informant contacted Agent Collins several months later, and advised Agent Collins that he (the informant) understood that Lee was in possession of drugs. Subsequently, Agent Collins supplied the informant with money to make drug purchases from Lee. Agent Collins searched the informant before each purchase, drove the informant to Lee's house where the purchases took place, and received the evidence from the informant after each purchase. On each occasion, the informant was paid $25.00 by FDLE. According to Agent Collins, these drug purchases were not reverse sting operations, i.e., the drugs purchased by the informant from Lee belonged to Lee and not to the FDLE.
Testimony at the hearing on Lee's motion to dismiss reflects that shortly after the two purchases from Lee, the informant was placed on a weekly salary. Agent Collins was aware that the informant had a record of numerous convictions, including a conviction for perjury. The informant had at least four aliases, and his only sources of income during the time period relevant to this case were payments from FDLE and money received from the sale of items he had stolen.
On February 20, 1985, Lee entered a negotiated plea of nolo contendere to the Count I charge of possession of a controlled substance. The plea agreement provided that:
(1) The defendant reserves his right to appeal the denial of defendant's motion to dismiss for improper governmental conduct.
(2) The State will recommend probation.
(3) The State will remain silent as to the withholding of adjudication of guilt.
(4) The State will enter a nolle prosequi to Counts II, III and IV of the information.
On March 13, 1985, Lee filed a motion to withdraw his plea of nolo contendere, alleging that the state had violated the plea agreement. The basis of the allegation was that FDLE Agent Collins, in a Presentence Investigation Report interview, recommended incarceration of Lee for the alleged offense. Lee's attorney had deposed Agent Collins a short time before. At that time, Agent Collins represented that FDLE did not consider Lee a major drug dealer.
*82 On April 1, 1985, Lee was adjudicated guilty of possession of a controlled substance. He was placed on three years probation, and ordered to serve 60 days in a Department of Corrections institution.
With regard to the due process issue, Lee contends that the factual situation of this case brings it within the rulings of State v. Glosson, 462 So.2d 1082 (Fla. 1985) and Williamson v. United States, 311 F.2d 441 (5th Cir.1962), which expressly disapproved contingent fee agreements against particular defendants as to crimes not yet committed. Lee places special reliance on this court's opinion in State v. Glosson, 441 So.2d 1178 (Fla. 1st DCA 1983), subsequently approved by the Florida Supreme Court. In State v. Glosson this court found that conduct by the state, through the machinations of its paid informant, was "more akin to the manufacturing of criminal activity ... [than to a] situation where the state merely seeks evidence of criminal activity." The court expressed its disapproval of state orchestration of criminal activity, for it deprives defendants of due process. Id., 1179.
While the circumstances of the instant case are somewhat similar to those of Glosson, there are some rather significant differences. In Glosson, the defendants were targeted by law enforcement; the informant had an oral agreement with the Levy County Sheriff  which agreement was carried out under the supervision of the State's Attorney; the informant's fee was contingent upon his cooperation and testimony in the criminal prosecution; and the criminal activity involved a "reversesting" operation in that trafficking charges were made on the basis of cannabis controlled by the Levy County Sheriff's Department. In the instant case, however, Lee was targeted by the informant rather than being named by an agent of the state; the State Attorney's office was not involved in the operation and did not supervise the informant in any way; the drugs sold by Lee were owned by him; and although the informant was paid after each purchase, his fee was not contingent upon a successful prosecution. We conclude, therefore, that the facts of this case do not rise to that level of state involvement which in Glosson constituted a violation of constitutional due process, and affirm the trial court's denial of the motion to dismiss.
As second point for review, Lee alleges the state breached the plea agreement because in the Presentence Investigation report, FDLE Agent Collins recommended incarceration although the plea agreement provided that the state would recommend probation. The state relies on Wood v. State, 346 So.2d 143 (Fla. 1st DCA 1977), to support its contention that Agent Collins' comments did not constitute a violation of the plea agreement on the part of the state, since the assistant state attorney, and not Agent Collins, was the spokesman for the state. In Wood v. State the appellant had entered a plea of nolo contendere to a charge of possession of marijuana in return for the state's agreement to remain mute at sentencing. In the Presentence Investigation report in Wood, as in the instant case, an officer on narcotics task force recommended incarceration. Because the assistant state attorney remained mute at sentencing, the trial court ruled there had been no violation of the plea agreement. This court affirmed, saying:
Here the prosecutor made no recommendation or comment regarding sentence and we do not consider that Officer Hicks' statement should be considered a recommendation of the State. The State was, of course, represented in the proceedings by the state attorney's office and the assistant state attorney who handled the case was the spokesman for the State. Id., 144.
We consider the Wood decision dispositive of the issue, and affirm the trial court's denial of Lee's motion to withdraw plea.
Nevertheless, we recognize that our decision today and this court's earlier decision in Wood v. State, 346 So.2d 143 (Fla. 1st DCA 1977), is in conflict with the Fourth District's decision in Fortini v. State, 472 So.2d 1383 (Fla. 4th DCA 1985). Therefore, pursuant to Article V, Section 3(b)(3), *83 Florida Constitution and Florida Rule of Appellate Procedure 9.030(a)(2)(A)(iv), we certify the following question:
WHEN A LAW ENFORCEMENT OFFICER MAKES AN INDEPENDENT RECOMMENDATION TO THE TRIAL COURT THAT RUNS COUNTER TO THE RECOMMENDATION IN A PLEA AGREEMENT ENTERED INTO BY THE STATE ATTORNEY'S OFFICE FOR THE "STATE," MUST THE TRIAL COURT PERMIT A WITHDRAWAL OF THE PLEA?
AFFIRMED.
BARFIELD, J., concurs.
ERVIN, J., concurs in part and dissents in part, with opinion.
ERVIN, Judge, concurring in part and dissenting in part.
I agree with the majority's opinion as to the disposition of the first point on appeal, holding that the state's contingent fee agreement with the confidential informant did not under the circumstances violate Lee's right to due process. My reading of State v. Glosson, 462 So.2d 1082 (Fla. 1985) is that the court's primary concern was with what effect the fee arrangement might have on the informant's testimony. There, the responsibilities of the informant included not only his involvement in the criminal prosecution in an undercover capacity, but his testimony at trial as well. As the court observed in Glosson:
The informant here had an enormous financial incentive not only to make criminal cases, but also to color his testimony or even commit perjury in pursuit of the contingent fee. The due process rights of all citizens require us to forbid criminal prosecutions based upon the testimony of vital state witnesses who have what amounts to a financial stake in criminal convictions.
462 So.2d at 1085. In the case at bar, the state's prosecution was not dependent upon the testimony of the informant. Indeed, the convictions could have been secured without his testimony in that his activities at all crucial times were observed by FDLE Agent Collins, who searched the informant before the purchase, saw the exchange of both money and cocaine between the appellant and informer, and received the drugs immediately afterward.
As to the majority's disposition of point two, relating to the trial court's alleged error in denying appellant's motion to withdraw his plea, I strongly disagree. Because I regard Florida Rule of Criminal Procedure 3.170(f)[1] to require a withdrawal of a plea under circumstances such as those presented below, I consider that the trial court abused its discretion in disallowing the request.
Wood v. State, 346 So.2d 143 (Fla. 1st DCA 1977) (Wood I) is not controlling. The facts there reflect that the state attorney agreed to remain mute at sentencing; that he would recommend neither probation nor incarceration. The effect of such an agreement was that the state would not oppose probation, nor would it recommend it. Compare Adler v. State, 382 So.2d 1298, 1305 (Fla. 3d DCA 1980) (no violation of a plea bargain agreement by the indirect recommendation of sentencing by Probation and Parole officer in the absence of any direct recommendation by state attorney). In the case at bar the assistant state attorney made an affirmative representation that he would offer probation  a recommendation that was in fact made, but undermined by Agent Collins' later submission of incarceration in the presentence investigation report.
The state should not be permitted to disregard the mutual promises and obligations made between the representative of the state who controls the prosecution, and the defendant, particularly when the defendant, in reliance upon such promises, agrees to forego certain rights vouchsafed to him by the constitution, including his *84 "rights to a jury trial ..., to confront one's accusers ..., to present witnesses in one's defense ..., to remain silent ..., and to be convicted by proof beyond all reasonable doubt". Santobello v. New York, 404 U.S. 257, 264, 92 S.Ct. 495, 30 L.Ed.2d 427, 434 (1971) (Douglas, J., concurring). The observations of Justice Marshall, stating that "[w]hen a prosecutor breaks the bargain, he undercuts the basis for the waiver of constitutional rights implicit in the plea", Santobello, 404 U.S. at 268, 92 S.Ct. at 502, 30 L.Ed.2d at 436 (Marshall, J., concurring in part and dissenting in part), have now been followed by practically all courts.
The instant case does not represent a situation, such as in State v. Adams, 342 So.2d 818 (Fla. 1977), in which the state attorney complied with his plea bargain agreement that he make a certain recommendation as to disposition. The supreme court ruled that the trial court was not bound by the recommendation of the state attorney, or any negotiations which occurred between the state attorney and defense counsel, in that the judge did not participate in the plea bargaining between the state and defense counsel. In my judgment the case at bar is governed by the rule that if the state attorney breaches his agreement to make a certain recommendation as to sentencing, and the trial court's disposition of the case is influenced by the breach, error results if the defendant is not given the opportunity to withdraw his plea. See Lollar v. State, 443 So.2d 1079 (Fla.2d DCA 1984). I would carry the above rule one step further and hold that a breach occurs if any representative of the government fails to honor a plea bargain agreement entered into between the state and the defense, particularly if it influences a consequence not contemplated by the agreement.
The prosecuting attorney is, under Florida Rule of Criminal Procedure 3.171, the sole party representing the state to such agreements. The state attorney controls the prosecution of felonies committed within the particular circuits  not the investigating officers. As was observed by the Florida Supreme Court in Deeb v. State, 131 Fla. 362, 179 So. 894, 898 (1937):
In the discharge of his official duties to prosecute on behalf of the State all criminal causes in the circuit court, the state attorney speaks and acts for the State; and in doing so, the law contemplates that the prosecution shall be conducted by due course of law, to the end that in a fair trial the charge against the accused may be proven in the manner required by law, and not otherwise.
(emphasis supplied) Cf. State v. Coney, 272 So.2d 550, 553 (Fla. 1st DCA 1973) (state attorney directed to disclose requested information to defendant, despite fact that such material was not in his physical possession, rather in that of certain law enforcement agencies, because state attorney is the official representing the state in the trial of the case, and the state has the obligation to secure to the defendant a fair trial).
A defendant or his attorney should be under no obligation to seek out all governmental agents who, directly or remotely, were involved in the investigation of the case in order to determine whether they concur in the bargain struck. It would be helpful for the state attorney to consult such persons before he enters into any such agreement, but once the agreement is achieved, fairness should dictate that no officer of the government will make any utterance that would tend to compromise its effectiveness. If such persons feel they cannot in good conscience respect the parties' compact, with the result that their reservations are conveyed to the trial judge, affecting any decision not to abide by the agreement, the contract in its entirety upon request should be vacated, including the defendant's plea. The basis for the vacation  no less than if the prosecution itself breaches the agreement  rests upon "an outraged sense of fairness". D. Newman, Conviction: The Determination of Guilt or Innocence Without Trial 36 (1966). The following comments applicable explicitly to prosecuting attorneys, should be applied to all agents of the government involved in the prosecution of a defendant:

*85 When the sentencing court has received and approved a plea of guilty entered upon an Adams-type bargain for a prosecutor's recommendation of a certain or maximum sentence, the State Attorney and his assistants should thereafter make no utterance tending to compromise whatever persuasive effect the incourt recommendation may have had. Representatives of that office shall, when requested by the court or its officers charged with the presentence investigation, repeat that recommendation with like effect as when it was originally made on plea day. All written communications by state agents to the court on the subject of sentencing shall be exhibited to defense counsel before sentencing, so that he or she may assure that no deliberate or inadvertent prosecutorial undermining of the recommendation has occurred.
Wood v. State, 357 So.2d 1060, 1065-66 (Fla. 1st DCA 1978) (Wood II).
Because the defendant demonstrated good cause for the withdrawal of his plea, as required by rule 3.170(f), his motion should have been granted. I would therefore reverse and remand with instructions to grant the motion and permit appellant to change his plea.
NOTES
[1] Subsection (f) provides in part: "The court may, in its discretion, and shall upon good cause, at any time before a sentence, permit a plea of guilty to be withdrawn and, ... allow a plea of not guilty... ." (emphasis supplied)